**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. _____**

| | |
|---|---|
| _____ <br><br> ROBERT MATTHEWS, LAWRENCE <br> JACKSON, JEFFREY JOHNSON, <br> WELTON FEREBEE, TRACY BOWSER, <br> DENNIS HUNTER, CHRIS CHAPPELL, <br> JAMIE GODFREY, MATTHEW BATEMAN, <br> JOHN PARRISH, GERRI WHITE, <br> TIMOTHY WARDEN, GREGORY BROWN, <br> MARCUS WHITE, DAVID PERRY, <br> GARY SPELLMAN, EDWARD JORDAN, <br> TAMA SPELLMAN, JAMIE SUTTON, <br> WILLIS DANCHISE, ROY FELTON, <br> RONALD CLARK, THOMAS WIGGINS, <br> JOHN PIERCE, JEFFERSON BROUGHTON, <br> CATHY HARRELL LOWRY, AS <br> ADMINISTRATOR OF THE ESTATE OF <br> FLEETWOOD HARRELL, individually <br> and on behalf of all others similarly situated, <br><br>         Plaintiffs, <br><br>     vs. <br><br> GUEST SERVICES, INC; GUEST SERVICES, <br> INC. TERMINATION PAY PLAN; and <br> GERARD T.GABRYS, <br><br>         Defendants. <br> _____ | CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

NOW COME Plaintiffs, by and through undersigned counsel, and allege as follows:

1.      Plaintiffs bring this action under the Employee Retirement Income Security Act, 29

        U.S.C. §1001 *et seq*. ("ERISA") on account of Defendant Guest Services, Inc.'s ("GSI")

        failure to pay them benefits under a Terminal Leave Pay Plan ("Plan") established by

        GSI.  Plaintiffs also bring this action under the North Carolina Wage and Hour Act,

codified under N.C.G.S. § 95-25.1 *et. seq*, ("NCWHA") to recover damages for violation of the NCWHA's wage payment provisions. Plaintiffs also bring this action for breach of contract.

## SUBJECT MATTER JURISDICTION AND VENUE

2.  This Court has jurisdiction to hear Plaintiffs' ERISA claims pursuant to 28 U.S.C. §1331, in that Plaintiff's claims arise under the laws of the United States. Specifically, Plaintiffs bring this action under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B); and ERISA §502(a)(2), 29 U.S.C. 1132(a)(2), ERISA §409, 29 U.S.C. §1109.

3.  This Court should assume supplemental jurisdiction of Plaintiff's state law claims under the NCWHA and common law, pursuant to 28 U.S.C. §1367(b), because those claims are based upon the same operative facts as the ERISA claims over which this Court has jurisdiction, and judicial economy and fairness to the parties demands that the Court assume and exercise jurisdiction over all claims alleged herein.

4.  This Court also has jurisdiction of this matter pursuant to 28 U.S.C. §1332(a), in that the amount of damages in controversy exceeds $75,000 and there is complete diversity of citizenship between all Plaintiffs and Defendants.

5.  Venue in the Western District of North Carolina is appropriate pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2) because of Defendants doing business and being found in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b) in that Defendant does business in this district and is subject to personal jurisdiction in this district.

## PARTIES

6.  Plaintiff Robert Matthews is a citizen of the United States and the State of Florida residing in Jacksonville Beach, Florida. Plaintiff Matthews worked at Guest Services,

Inc. for two decades prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Hertford, Perquimans County, North Carolina.

7. Plaintiff Lawrence Jackson is a citizen of the United States and the State of North Carolina residing in Elizabeth City, North Carolina. Plaintiff Jackson worked at Guest Services, Inc. as a Heavy Equipment Operator for eleven (11) years until his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Pasquotank County, North Carolina.

8. Plaintiff Jeffrey Johnson is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Johnson worked at Guest Services, Inc. for sixteen (16) years as a Security Officer/Range Coordinator. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

9. Plaintiff Welton Ferebee is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Ferebee worked at Guest Services, Inc. for twenty-one (21) years as a Heavy Equipment Operator until his retirement in or about November 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

10. Plaintiff Tracy Bowser is a citizen of the United States and the State of North Carolina residing in Edenton, North Carolina. Plaintiff Bowser worked for Guest Services, Inc. for eighteen (18) years before her retirement in or about October 2021. Throughout her employment with Defendant GSI, she resided in Chowan County, North Carolina.

11. Plaintiff Dennis Hunter is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Hunter worked for Guest Services, Inc. in

the Housekeeping/Public Works department for twenty-two (22) years before his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

12.     Plaintiff Chris Chappell is a citizen of the United States and the State of North Carolina residing in Tyner, North Carolina. Plaintiff Chappell worked for Guest Services, Inc. as a Lead Mechanic for twenty-two (22) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Chowan County, North Carolina.

13.     Plaintiff Jamie Godfrey is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Godfrey worked for Guest Services, Inc. in the Public Works department for eleven (11) years prior to their retirement in October 2021. Throughout their employment with Defendant GSI, they resided in Perquimans County, North Carolina.

14.     Plaintiff Matthew Bateman is a citizen of the United States and the State of North Carolina residing in Elizabeth City, North Carolina. Plaintiff Bateman worked for Guest Services, Inc. as a Supervisor for eighteen (18) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Pasquotank County, North Carolina.

15.     Plaintiff John Parrish is a citizen of the United States and the State of North Carolina residing in Edenton, North Carolina. Plaintiff Parrish worked for Guest Services, Inc. as a Security Technician for twenty-five (25) years prior to his retirement in or about September 2021. Throughout his employment with Defendant GSI, he resided in Chowan County, North Carolina.

16.     Plaintiff Gerri White is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff White worked for Guest Services, Inc. as an Administrative Clerk for seventeen (17) years prior to her retirement in or about October 2021. Throughout her employment with Defendant GSI, she resided in Perquimans County, North Carolina.

17.     Plaintiff Timothy Warden is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Warden worked for Guest Services, Inc. as a Carpenter for twenty-one (21) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

18.     Plaintiff Gregory Brown is a citizen of the United States and the State of North Carolina residing in Elizabeth City, North Carolina. Plaintiff Brown worked for Guest Services, Inc. as a Telecommunications Technician for seventeen (17) years prior to his retirement in or about 2021. Throughout his employment with Defendant GSI, he resided in Pasquotank County, North Carolina.

19.     Plaintiff Marcus White is a citizen of the United States and the State of North Carolina residing in Edenton, North Carolina. Plaintiff White worked for Guest Services, Inc. as a Cook for eighteen (18) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Chowan County, North Carolina.

20.     Plaintiff David Perry is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Perry worked for Guest Services, Inc. as a Pest Control Operator for thirty-four (34) years prior to his retirement in or about October

2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

21.    Plaintiff Gary Spellman is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Spellman worked for Guest Services, Inc. in the General Maintenance department for thirteen (13) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

22.    Plaintiff Edward Jordan is a citizen of the United States and the State of North Carolina residing in Edenton, North Carolina. Plaintiff Jordan worked for Guest Services, Inc. as a Range Coordinator for sixteen (16) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Chowan County, North Carolina.

23.    Plaintiff Tama Spellman is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Spellman worked at Guest Services, Inc. as a Security Escort for sixteen (16) years prior to her retirement in or about October 2021. Throughout her employment with Defendant GSI, she resided in Perquimans County, North Carolina.

24.    Plaintiff Jamie Sutton is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Sutton worked at Guest Services, Inc. as a Motor Pool Vehicle Coordinator for sixteen (16) years prior to her retirement in or about September 2021. Throughout her employment with Defendant GSI, she resided in Perquimans County, North Carolina.

25.    Plaintiff Willis Danchise is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Danchise worked at Guest Services, Inc. in the Warehouse department for thirty-nine (39) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

26.    Plaintiff Roy Felton is a citizen of the United States and the State of North Carolina residing in Elizabeth City, North Carolina. Plaintiff Felton worked for Guest Services, Inc. as a Welder for sixteen (16) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Pasquotank County, North Carolina.

27.    Plaintiff Ronald Clark is a citizen of the United States and the State of North Carolina residing in Southport, North Carolina. Plaintiff Clark worked for Guest Services, Inc. in the Computer Support department for sixteen (16) years until his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Eizabeth City, Pasquotank County, North Carolina.

28.    Plaintiff Thomas Wiggins is a citizen of the United States and the State of North Carolina residing in Hobbsville, North Carolina. Plaintiff Wiggins worked for Guest Services, Inc. as a Grounds Keeper Supervisor for nineteen (19) years prior to his retirement in or about October 2021. Throughout his employment with Defendant GSI, he resided in Gates County, North Carolina.

29.    Plaintiff John Pierce is a citizen of the United States and the State of North Carolina residing in Edenton, North Carolina. Plaintiff Pierce worked for Guest Services, Inc. as a Range Coordinator for seventeen (17) years prior to his retirement in or about November

2021. Throughout his employment with Defendant GSI, he resided in Chowan County, North Carolina.

30.    Plaintiff Jefferson Broughton is a citizen of the United States and the State of North Carolina residing in Hertford, North Carolina. Plaintiff Broughton worked for Guest Services, Inc. in the Public Works department for thirty-seven (37) years prior to his retirement in or about August 2021. Throughout his employment with Defendant GSI, he resided in Perquimans County, North Carolina.

31.    Plaintiff Cathy Harrell Lowry is the administrator of the Estate of Fleetwood Linwood "Buddy" Harrell, Plaintiff Lowry's former husband.  Plaintiff Lowry and the Estate are citizens of the United States and the State of North Carolina.  Plaintiff Lowry currently resides in Hertford, North Carolina.  Mr. Harrell worked for Defendant GSI as a Security Supervisor for thirty-seven (37) years until his death in July 2018.  Plaintiff Lowry and Mr. Harrell resided in Chowan County, North Carolina while Mr. Harrell worked for Defendant GSI.

32.    Defendant GSI is a properly formed entity authorized to do business in North Carolina. GSI is a citizen of Virginia because it is headquartered in Fairfax, Virginia.  GSI is a citizen of the District of Columbia because it is incorporated in the District of Columbia.

33.    Defendant Plan is an employee retirement benefit plan subject to ERISA and the regulations promulgated thereunder.

34.    Defendant Gerry Gabrys was the Chief Executive Officer of Defendant GSI from 2001 through December 31, 2021.  Upon information and belief, Defendant Gabrys is a citizen and resident of Virginia.

35.     GSI was founded in 1917 and is one of the longest-running contractors for the United
        States government. GSI provides hospitality management and business support services.
        GSI and its subsidiaries employ several thousand individuals at more than 250 facilities
        across the United States.  Plaintiffs dedicated over a decade—and in some cases several
        decades—of their professional lives to GSI.

*Terminal Leave Pay Policy*

36.     GSI offered "Terminal Leave Pay" to its employees as early as December 8, 1995.
        Pursuant to this Plan, GSI represented to its employees that they are entitled to a payout
        on the last day of their employment with GSI equivalent to two (2) days of pay for each
        year of their employment with GSI. The only eligibility criteria was that the employee
        was not terminated for cause before retiring.

37.     Upon information and belief, many GSI employees received a payout under this Plan
        pursuant to the formula described in the preceding paragraph.  Upon information and
        believe, and as further detailed herein, GSI withheld money from Plaintiff's paychecks to
        pay for this benefit under the Plan.

38.     Despite GSI's consistent representations regarding this Plan to employees for over two
        decades, the Company purportedly amended the policy on or about July 1, 2019—
        twenty-four (24) years after it went into effect—without notice to any of the participants.
        The 2019 Amendment to the Plan deviated significantly from the Company's earlier,
        consistent representations. While the formula for calculating the benefits under the Plan
        remained the same, the Company allegedly imposed a new set of criteria with the 2019
        Amendment.

39. For example, under the purported 2019 amendments, GSI now required employees to: (i) permanently retire from the workforce after leaving GSI; (ii) have worked at GSI for ten (10) years on a continuous basis; (iii) be at least 55 years of age; and (iv) submit a request form for the Plan benefits no earlier than nine (9) months after leaving GSI accompanied by proof of continuous unemployment for that duration of time.

40. The implementation of these new eligibility criteria substantially reduced the amount of money GSI would have to pay out to employees when the Company's government contract ended for the facility at which Plaintiffs worked (such facility known as "Harvey Point.")

41. GSI also represented to employees that the 2019 version of the Plan—particularly its new eligibility requirements—would apply retroactively. Furthermore, GSI stated that the Plan was not voluntary. As such, employees who knew they would be ineligible under the new standards (e.g., because they planned to continue working after leaving GSI) could not opt out and elect not to fund the Plan with their own funds. Moreover, a retroactive application would mean employees who were previously eligible for the Terminal Leave Pay would never receive the payout GSI promised them for over two decades.

42. Plaintiffs met the only criteria for entitlement to Terminal Leave Pay under the Plan, to wit, none of Plaintiffs were terminated for cause before their retirements from Defendant GSI.

*Deferred Pay Withholding*

43. Throughout Plaintiffs' employment, GSI deducted monies denominated as "Deferred Pay" from Plaintiffs' paychecks. Plaintiffs reached out to Defendant GSI's human resources personnel and others within the Company—including Defendant Gabrys—to

inquire about the "deferred pay" deductions on their paystubs. Plaintiffs wanted clarity regarding what the deductions were for and why they were being taken out of their pay each pay period.

44. Despite Plaintiffs' repeated inquiries as to what the deduction referred to and where the deducted funds were going, no one within the Company could provide a definitive answer. The response was essentially just, "we'll look into it and get back to you." However, GSI never did.

45. On information and belief, the Deferred Pay deductions were intended to fund benefits under the Plan.

46. On information and belief, the Deferred Pay deductions made by Defendant GSI were used to pay benefits under the Plan.

47. On information and belief, the Deferred Pay deductions taken from Plaintiffs' and other employees' pay were not held in trust.

48. On information and belief, the Deferred Pay deductions taken from Plaintiffs' and other employees' pay were held in Defendant GSI's corporate account and co-mingled with Defendant GSI's other corporate assets.

49. On information and belief, the Deferred Pay deductions taken from Plaintiffs' and other employees' pay were used by Defendant GSI to pay corporate and other non-Plan payments.

50. On information and belief, the Deferred Pay deductions taken from Plaintiffs' and other employees' pay were not invested in any type of investment asset.

51.     On information and belief, the Deferred Pay deductions taken from Plaintiffs' and other

        employees' pay were not invested in investment assets appropriate under ERISA's

        fiduciary standards for retirement plan assets;

52.     On information and belief, Defendants cannot provide a full accounting of the Deferred

        Pay deductions.

*Fringe Benefits*

53.     Because of Defendant GSI's work for the government, Defendant GSI was contractually

        obligated to furnish Plaintiffs with fringe benefit payments at a rate of over $4 per hour to

        the extent Plaintiffs were not provided in-kind fringe benefits equaling such amount.

54.     Defendant GSI represented to Plaintiffs orally and in writing that it would pay them

        fringe benefit payments at a rate of over $4 per hour to the extent Plaintiffs were not

        provided in-kind fringe benefits equaling such amount.

55.     Defendant GSI has not paid Plaintiffs the promised fringe benefit payments at the

        promised rate of over $4 per hour to the extent Plaintiffs were not provided in-kind fringe

        benefits equaling such amount.

*GSI's 2021 Responses to Employee Complaints about Pay Practices*

56.     In May 2021, then-CEO of the Company, Defendant Gabrys, met with employees

        regarding the Plan. During this meeting, employees questioned Mr. Gabrys as to: (1) why

        the Company did not provide a copy of the Plan to employees prior to 2019; (2) what the

        Company did with the funds deducted from employees' paychecks; and (3) what the

        "Deferred Pay" practices pertained to.

57.     Defendant Gabrys could not provide a substantive response to any of these questions. Rather, he claimed that employees that they had not been contributing to Terminal Leave pay prior to 2019.

58.     When employees asked where the funds from the "deferred pay" deductions on their paystubs went prior to 2019, Defendant Gabrys stated that he had no answer for them. He then stated that employees would be paid what they were due once GSI's current government contract ended. Once pressed, however, he represented that continuing to work for Boeing—the company taking over GSI's government contract—would result in forfeiture of all benefits under the Plan.

59.     Naturally, Plaintiffs were not satisfied with these answers and continued to seek clarification. However, Defendants continued to employ the same smoke-and-mirrors responses.

60.     On October 31, 2021, GSI lost the contract with the federal government and Boeing took over that contract. The week before the contract switched to Boeing, Defendant Gabrys, the CEO at the time, met with the employees to thank them for their years of service. Several employees asked in the meeting what was going to happen with their Plan benefits, as they had been told that  starting a contract with a new employer would cause them to lose out on the benefit. Defendant Gabrys backtracked yet again, saying that Plan was a discretionary benefit and they were not entitled to the pay.

61.     While some people received small payments, all the Plaintiffs were denied years of benefits that were originally promised to them because they continued to work for the new contractor, Boeing.

*Class Allegations*

62.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the following Class (the "Class"):

> All former employees of Defendant GSI on or after December 8, 1995 who (i) were covered by the Plan, (ii) had monies withheld by GSI as "Deferred Pay," and/or (iii) did not receive fringe benefit payments at a rate of over $4 per hour to the extent Plaintiffs were not provided in-kind fringe benefits equaling such amount.

63.     This action can properly be maintained as a class action.

64.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Defendant GSI and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

65.     Questions of law and fact that are common to all Class members predominate over any individual issues and include the following:

a.      whether the above-described Termination Pay Plan is a plan subject to ERISA and its requirements and, if so, whether members are entitled to benefits under the Plan;

b.      if the Plan is not an ERISA plan, whether Defendants GSI, and Gabrys violated the North Carolina Wage and Hour Act by failing to pay benefits under the Plan and withholding employees' wages and refusing to pay them those wages;

c.      whether Defendants GSI, and Gabrys are responsible for paying fringe benefits payments at a rate of over $4 per hour to the extent Plaintiffs were not provided in-kind fringe benefits equaling such amount; and

d.      whether Plaintiffs and the other members of the Class have sustained damages or other harm or are entitled to certain declaratory and injunctive relief and, if so, what is the appropriate measure of damages or remedy for the harm.

66.    Plaintiffs' claims are typical of the claims of the other Class members in that they arise from the same allegedly unlawful course of conduct and are based on the same legal theories.  Thus, Plaintiffs will invoke the same legal theories to establish liability and damages (and face the same defenses) that all other Class members would if they sued separately.

67.    Plaintiffs share the interests of the other members of the Class in recovering the damages suffered or obtaining appropriate relief as a result of Defendants' misconduct identified herein.  Plaintiffs have also retained well-qualified counsel experienced in cases of this nature to represent them in conducting this litigation.  Because Plaintiffs do not have interests that are antagonistic to the other members of the Class and have retained qualified experienced counsel, one or more Plaintiffs and their counsel are fair and adequate representatives of the Class.

68.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, as separate actions by each of the Class members would be repetitive, wasteful, and an extraordinary burden on the Court.  On information and belief, the Class members' identities, recent residential addresses, and all other  records are all readily available in the books and records of Defendants.  Counsel anticipates no difficulty in managing this litigation as a class action.

**(COUNT I – Denial of benefits under ERISA §502(a)(1)(B) against Defendant GSI and Defendant Plan)**

69.  Plaintiffs incorporate the allegations of the paragraphs set forth above to the extent not inconsistent herewith.

70.  The purported 2019 Amendments are invalid and not part of the Plan terms because, among other reasons, the Plan was not amended to include any such amendments.

71.  Even if the purported 2019 Amendments are part of the Plan terms, such amendments applied retroactively violate the anti-cutback rules under ERISA and therefore are not enforceable against Plaintiffs and other Plan participants.

72.  Plaintiffs have demanded payment of their benefits under the Plan but the Plan and Defendant GSI, as plan administrator for the Plan, have failed to provide Plaintiffs the benefits to which they are entitled under the Plan.

73.  Plaintiffs have satisfied all administrative requirements to bring this claim.

74.  The Plan does not contain any claims procedure regarding procedures or requirements for a Plan participant to claim benefits under the Plan.

75.  The Plan does not contain any claims procedure compliant with ERISA regarding procedures or requirements for a Plan participant to claim benefits under the Plan.

76.  No summary plan description exists for the Plan.

77.  No summary plan description was ever distributed for the Plan.

78.  To the extent that Plaintiffs have not satisfied any applicable administrative requirements to bring this claim, any attempt by Plaintiffs to do so would be futile and are therefore waived or excused.

79.  Defendants have wrongfully denied benefits to Plaintiffs in violation of Plan provisions and ERISA for the following reasons:

a. Plaintiffs have been wrongfully denied retirement benefits under the Plan;

b. Defendant GSI failed to accord proper weight to the evidence in the administrative record; and

c. Defendant Plan has violated its contractual obligation to furnish benefits to Plaintiffs.

**(COUNT II – Breach of fiduciary duty under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§1109 and 1132(a)(2) against Defendants GSI and Gabrys)**

80.     Plaintiffs incorporate the allegations of the paragraphs set forth above to the extent not inconsistent herewith.

81.     One or more Plaintiffs bring this claim on behalf of the Plan (as the entity entitled to recovery under the ERISA statute) to require that Defendants GSI and Gabrys (i) create and correctly distribute a summary plan description of the Plan to all Plan participants, including Plaintiffs, (ii) permit employees to participate in the Plan according to its terms and follow Plan terms for enrollment of employees, (iii) provide correct information as required under ERISA to Plan participants about their rights under the Plan, (iv) place all funds withheld from Plaintiffs and other participants and any other amounts necessary to fund Plan benefits into a trust account, as required under ERISA; (v) cease dealing with the assets of the Plan for its own benefit and committing other prohibited transactions, (vi) require restoration of any losses to the Plan caused by Defendants' breaches of their fiduciary duties.

82.     Defendant GSI is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21) because it is the employer sponsoring the Plan and is therefore the default Plan Administrator under ERISA.

83. Defendant GSI is also a fiduciary as defined in ERISA because, among other actions or inactions, it (i) dealt with Plan assets including withholding Plan assets in the form of Deferred Pay to fund the Plan, (ii) it provided information (and misinformation) about Plan terms to Plan participants, (iii) it made decisions regarding investments of Plan assets, including the failure to invest Plan assets appropriately, (iv) it administered the Plan by deciding whether or not to pay benefits to Plan participants, and (v) it wrongfully implemented and managed and administered the Plan under illegal terms.

84. As Plan Administrator, Defendant GSI is obligated to, and responsible for, the overall operation of the Plan, including but not limited to (i) monitoring enrollment and participation of employees in the Plan, (ii) operating the Plan in compliance with its terms and applicable laws, including ERISA and the Internal Revenue Code ("Code"), and (iii) ensuring Plan assets are held in trust and appropriately invested to provide benefits for Plan participants.

85. Defendant Gabrys is a fiduciary as defined in ERISA because, among other things, he (i) directed Plan assets as described herein by, among other things, permitting their use for purposes other than Plan purposes, (ii) misrepresented Plan terms, as described herein, (iii) refused to pay or allow to be paid Plan benefits to Plaintiffs, which benefits were due to Plaintiffs, and (iv) enforced illegal and improper Plan terms by refusing to pay Plan benefits and imposing such illegal terms.

86. Defendants GSI and Gabrys breached their fiduciary duties by, among other actions or failures to act, (i) failing to monitor enrollment and participation of employees in the Plan, (ii) failing to operate the Plan in compliance with its terms and applicable laws, including ERISA and the Code, including vesting and (iii) failing to ensure Plan assets

are held in trust, (iv) failing to invest Plan assets appropriately, (v) failing to make contributions to the Plan on behalf of participants, (vi) failing to monitor contributions to the Plan on behalf of participants, and (vii) failing to ensure contributions to the Plan on behalf of participants, (viii) dealing with Plan assets for its own benefit in violation of ERISA prohibited transaction rules, (ix) misrepresenting Plan terms and condition to participants, (x) applying unlawful plan terms, including but not limited to purported terms that would result in a cutback of Plan participants' benefits, and (x) failing to make proper disclosures and provide appropriate information and disclosures to Plan participants and the U.S Department of Labor, including but not limited to appropriate disclosures of purported changes to Plan terms under ERISA §204(h).

87.     Defendant GSI has stated that the Plan complies, and is intended to comply, with all requirements under ERISA.

88.     Defendant GSI intended for the Plan to comply with all requirements under ERISA.

89.     The Plan does not comply with all applicable requirements under ERISA.

90.     The Plan has been harmed as a result of Defendants' breaches of fiduciary duties in that, among other ways, it (i) has not been administered in compliance with its terms, (ii) has not been administered in compliance with ERISA and the Code, (iii) has had misinformation about Plan terms and conditions provided to participants, (iv) has suffered losses in the form of missed contributions, and (v) has suffered losses in the form of lost investment gains as a result of the failure to invest Plan assets properly.  The Plan will continue to suffer harm and losses until Defendants are required to, among other things, (i) establish reasonable and legally compliant enrollment and participation procedures, (ii) establish reasonable and legally compliant contribution collection

procedures, (iii) establish reasonable and legally compliant information dissemination procedures, (iv) comply with ERISA requirements regarding holding and investment of assets in trust, and (v) comply with and consistently administer such procedures and requirements.

91.　The Plan is entitled to equitable and remedial relief requiring that Defendants GSI and Gabrys:

　　a.　Correctly distribute a summary plan description of the Plan to all Plan participants, including Plaintiffs,

　　b.　Permit employees to participate in the Plan according to its terms and follow Plan terms for enrollment of employees,

　　c.　Establish and follow Plan terms for participation and enrollment of participants according to ERISA and Code requirements, including vesting, participation, and accrual of benefits requirements,

　　d.　Provide correct information as required under ERISA to Plan participants about their rights under the Plan,

　　e.　Place all funds withheld from Plaintiffs and other participants in a trust account, as required under ERISA;

　　f.　Invest funds intended to provide benefits in an appropriate manner and one compliant with ERISA;

　　g.　Fund a trust to provide for benefits under the Plan;

　　h.　Cease dealing with the assets of the Plan for its own benefit and committing other prohibited transactions,

i. Monitor any other entities or fiduciaries to whom Defendants have delegated their responsibilities under the Plan;

j. Establish reasonable procedures for the dissemination of information concerning the Plan, including all required information and statements under ERISA;

k. Administer the Plan in compliance with applicable legal requirements, including ERISA and the Code, including terms requiring appropriate enrollment and participation of employees, as well as those requiring contributions to fund the Plan;

l. Make whole the Plan for all losses caused to the Plan by reason of Defendant GSI's fiduciary breaches, including but not limited to the failure to make contributions to the Plan, including any earnings or profits that could have or should have been made through the proper use of the Plan assets;

m. Take appropriate action to recover the wrongfully withheld monies Defendant GSI should have contributed to the Plan and held in trust;

n. Remove Defendant GSI as a fiduciary from the Plan and appoint an appropriate fiduciary; and

o. Other appropriate declaratory, injunctive, and equitable relief.

**(COUNT III – Attorneys' fees under ERISA §502, 29 U.S.C. §1132 against all Defendants)**

92. Plaintiffs incorporate the allegations of the paragraphs set forth above to the extent not inconsistent herewith.

93. Plaintiffs are entitled to their attorney's fees and costs pursuant to ERISA §502(g), 29 U.S.C. §1132(g).

**(COUNT IV- Violation of NCWHA- Failure to Pay Wages against Defendants GSI and Gabrys)**

94. Plaintiffs incorporate the allegations of the paragraphs set forth above to the extent not inconsistent herewith.

95. To the extent this claim is inconsistent with the allegations of the prior claims in Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 8, Plaintiffs plead this claim in the alternative to any such inconsistent claims.

96. The NCWHA was enacted to protect workers who, as a matter of economic reality, are dependent upon the businesses and related persons to which they render service, and to promote the general welfare of people employed in North Carolina. N.C.G.S. § 95-25.1.

97. Defendant GSI is an employer at that term is defined under the NCWHA.

98. Defendant Gabrys is an employer within the meaning of the NCWHA because Defendant Gabrys acted in the interest of Defendant GSI with respect to Plaintiffs' wages, as detailed herein, including refusing to pay Plaintiffs their wages due, attempting to change the amount of wages promised to Plaintiffs, misrepresenting wage terms to Plaintiffs, and other similar actions.

99. Plaintiffs are employees as that term is defined under the NCWHA.

100. It is unlawful under North Carolina law, and specifically under the wage and hour provisions of the NCWHA, for an employer to require or permit an employee to work without paying full compensation for all hours worked, under the NCWHA, including N.C.G.S. § 95-25.6.

101. It is unlawful under North Carolina law, and specifically under the wage and hour provisions of the NCWHA, for an employer to deduct any portion of an employees'

wages without authorization or proper notice, under the NCWHA, including N.C.G.S. § 95-25.8.

102. Plaintiffs were not exempt from the NCWHA's wage and hour provisions.

103. Defendants, through their policies, procedures, and actions as described herein, violated the NCWHA during the relevant time period by:

    a. Failing to pay Plaintiffs their promised wages for all hours worked, in violation of N.C.G.S. § 95-25.6;

    b. Illegally and unlawfully withholding Plaintiffs' wages for other than a purpose permitted under the NCWHA;

    c. Illegally and unlawfully withholding Plaintiffs' wages without informing them in writing of the purpose of the withholding;

    d. Failing to provide Plaintiffs proper notice of (i) the amount of wages to which they were due, (ii) withholding of their wages, and (iii) the purpose of withholding thereof;

    e. Failing to pay Plaintiffs promised wages in the form of fringe benefit payments at a rate of over $4 per hour to the extent Plaintiffs were not provided in-kind fringe benefits equaling such amount; and

    f. By other practices in violation of the NCWHA, including violation of N.C.G.S. § 95-25.1.

104. Defendants GSI and Gabrys's actions were willful and not based on any reasonable belief of compliance with the law.

105. Plaintiffs have sustained lost compensation as a proximate result of Defendants GSI and Gabrys's direct  violations of the NCWHA.  Accordingly, Plaintiffs seek damages in the

amount of their unpaid and unlawfully withheld compensation, plus liquidated damages, as provided under the NCWHA, N.C.G.S. § 95-25.22, as well as attorneys' fee, costs, and interest.

### (COUNT V-Breach of Contract against Defendant GSI)

106. Plaintiffs incorporate the allegations of the paragraphs set forth above to the extent not inconsistent herewith.

107. To the extent this claim is inconsistent with the allegations of the prior claims in Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 8, Plaintiffs plead this claim in the alternative to any such inconsistent claims.

108. Plaintiffs' payment of wages arises under the common law of contracts.

109. Defendant GSI offered, and Plaintiffs accepted, employment with Defendant GSI at the rates provided to Plaintiffs. These rates:

    a. Included termination pay under the Plan as described herein;

    b. Included fringe benefit payments at a rate of over $4 per hour to the extent Plaintiffs were not provided in-kind fringe benefits equaling such amount; and

    c. Did not include having pay unlawfully withheld (through "Deferred Pay" deductions as described herein) and not provided to them.

110. Defendant GSI willfully breached the contracts with Plaintiffs by not paying them the required wage rate for each hour of work they performed for Defendant and by unlawfully withholding a portion of Plaintiffs' promised wages.

111. As a result, Plaintiffs suffered an injury of loss of wages to which they were due.

112. Plaintiffs are therefore entitled to recover from Defendant GSI the amount of wages due to them, plus interest, costs, and attorneys' fees on any applicable basis.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully requests that the Court grant them the following relief:

(1)     To be afforded a jury trial on all issues triable by jury;

(2)     An order declaring that this action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and certifying one or more Plaintiffs as the class representatives;

(3)     An order declaring that this action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) and certifying one or more Plaintiffs as the class representatives;

(4)     Pursuant to ERISA §502(a)(1)(B), declaratory and injunctive relief, finding that Plaintiffs are entitled to benefits under the terms of the Plan and that Defendant GSI be ordered to pay retirement benefits under the Plan;

(5)     Pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), equitable and remedial relief for the Plan requiring that Defendants GSI and Gabrys:

> a.  correctly distribute a summary plan description of the Plan to all Plan participants, including Plaintiffs,
>
> b.  permit employees to participate in the Plan according to its terms and follow Plan terms for enrollment of employees,
>
> c.  Establish and follow Plan terms for participation and enrollment of participants according to ERISA and Code requirements, including vesting, participation, and accrual of benefits requirements,

d. provide correct information as required under ERISA to Plan participants about their rights under the Plan,

e. place all funds withheld from Plaintiffs and other participants in a trust account, as required under ERISA;

f. invested funds intended to provide benefits in an appropriate manner and one compliant with ERISA;

g. fund a trust to provide for benefits under the Plan;

h. cease dealing with the assets of the Plan for its own benefit and committing other prohibited transactions,

i. Monitor any other entities or fiduciaries to whom Defendants have delegated their responsibilities under the Plan;

j. Establish reasonable procedures for the dissemination of information concerning the Plan, including all required information and statements under ERISA;

k. Administer the Plan in compliance with applicable legal requirements, including ERISA and the Code, including terms requiring appropriate enrollment and participation of employees, as well as those requiring contributions to fund the Plan;

l. Make whole the Plan for all losses caused to the Plan by reason of Defendant GSI's fiduciary breaches, including but not limited to the failure to make contributions to the Plan, including any earnings or profits that could have or should have been made through the proper use of the Plan assets;

m.  Take appropriate action to recover the wrongfully withheld monies Defendant GSI should have contributed to the Plan and held in trust;

n.  Remove Defendant GSI as a fiduciary from the Plan and appoint an appropriate fiduciary; and

o.  Other appropriate declaratory, injunctive, and equitable relief;

(6)     Grant Plaintiffs their attorneys' fees, costs, and other expenses as provided in ERISA §502(g);

(7)     A judgement against Defendants GSI and Gabrys under N.C.G.S. § 95-25.22 for unpaid wages due to Plaintiffs and for liquidated damages and interest equal in the amount to the unpaid compensation found due to Plaintiffs;

(8)     A judgment against Defendants GSI for breach of contract in an amount in excess of $75,000, the exact amount to be determined at the trial of this action;

(9)     A judgment against Defendants GSI and Gabrys awarding the costs of this action;

(10)    A judgment against Defendants GSI and Gabrys awarding reasonable attorney fees under any applicable legal basis;

(11)    A declaration that Defendant GSIs and Gabrys willfully, and not in good faith, and without reasonable grounds to believe that their actions did not violate the law, violated provisions of the NCWHA by failing to comply with the wage payment requirements of the NCWHA;

(12)    A judgment granting pre-judgment and post-judgment interest at the highest rates allowed by law;

(13)    Such other and further relief as may be just and proper.

Respectfully submitted this the 29th day of December 2023.

/s/ Victoria T. Kepes
Victoria T. Kepes
N.C. State Bar No. 47856
The Noble Law Firm, PLLC
141 Providence Road, Suite 210
Chapel Hill, North Carolina 27514
Phone: (919) 251-6008
Fax: (919) 869-2079
Email: vkepes@thenoblelaw.com

/s/ Bryan L. Tyson
Bryan L. Tyson
N. C. State Bar No. 32182
Hannah Auckland
N.C. State Bar No. 35953
Marcellino & Tyson, PLLC
2200 East 7th Street, Suite 100
Charlotte, NC 28204
Phone: (704) 919-1519
Fax: (980) 219-7025
Email: bryan@yourncattorney.com
        hauckland@yourncattorney.com

*Attorneys for Plaintiffs*