IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00910-KDB-SCR

| | |
|---|---|
| TRACY BOWSER, DENNIS HUNTER, CHRIS CHAPPELL, JAMIE GODFREY, MATTHEW BATEMAN, JOHN PARRISH, GERRI WHITE, TIMOTHY WARDEN, GREGORY BROWN, MARCUS WHITE, ROBERT MATTHEWS, DAVID PERRY, LAWRENCE JACKSON, GARY SPELLMAN, EDWARD JORDAN, TAMA SPELLMAN, JAMIE SUTTON, WILLIS DANCHISE, ROY FELTON, RONALD CLARK, THOMAS WIGGINS, JOHN PIERCE, JEFFERSON BROUGHTON, CATHY HARRELL LOWRY, JEFFREY JOHNSON, AND WELTON FEREBEE, <br><br>    Plaintiffs, <br><br>    v. <br><br>GERARD T. GABRYS, GUEST SERVICES, INC., AND GUEST SERVICES, INC. TERMINATION PAY PLAN, <br><br>    Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants Guest Services, Inc. ("GSI") and Gerard T. Gabrys's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 18).[1] The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion.

---

[1] GSI's Terminal Leave Pay policy is also a named Defendant in this lawsuit, but because it is not a legal entity that can be sued, the Court will not list it among the moving Defendants.

1

# I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Also, in analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007).

In particular, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc*., No. 3:13 cv 679, 2016 WL 4706931, at *1, 2016 U.S. Dist. LEXIS 121043 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 396-97 (4th Cir. 2006)); *see also Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159 (4th Cir. 2016).

## II. FACTS AND PROCEDURAL HISTORY

GSI is a government contractor that provides hospitality management and business support services for the federal government. *See* Doc. No. 16 at ¶ 35. In October 2021, GSI lost a contract it held with the federal government to Boeing, who took over the contract. *Id.* at ¶ 73. GSI's then-CEO, Defendant Gabrys, allegedly met with employees on the project the week before the contract switched to Boeing to thank them for their years of service. In response to employee questions, he also allegedly told them that by leaving GSI to work for Boeing, rather than retiring from the workforce all together, the employees were not eligible to receive money under GSI's Terminal Leave Pay policy ("the Policy"). *Id.* at ¶¶ 71, 73. In this case, Plaintiffs allege that they are in fact entitled to be paid under this Policy and to receive other compensation for their work for GSI.

The Policy provides that "year-round, full-time hourly employees who were hired before January 1, 2009 and have worked exclusively in units 703X, 704X, 705X; or 7066 [but] have not participated in the Guest Services' salaried employees' retirement plan; and who are permanently retiring from the workforce after their last day of work with Guest Services" are eligible for a one-time payment at the rate of two days' pay per every full year of continuous employment with GSI. Doc. No. 19-2 at 2. To be eligible, employees who meet the above description must also have worked at least 10 full, continuous years for GSI and their age plus their total years worked for

3

GSI must equal at least 65. *Id.* The Policy was last amended in 2019 but began as early as 1995. *Id.* Plaintiffs allege that until the 2019 amendments, the Policy's only eligibility requirement was that the employee was not terminated for cause.[2] *See* Doc. No. 16 at ¶ 36.

Plaintiffs also allege that GSI improperly deducted money from their paychecks. These deductions were allegedly listed as "Deferred Pay" on Plaintiffs' paystubs. *Id.* at ¶ 54. Plaintiffs allege that these amounts were not deducted for any 401(k) or retirement plan sponsored by GSI, but instead were intended to fund benefits under the Policy. *Id.* at ¶¶ 56, 59. They further claim that GSI failed to pay Plaintiffs an additional wage or in-kind fringe benefits of over $4 per hour, which they were required to do as government contractors. *Id.* at ¶ 66.

Plaintiffs left GSI to work for Boeing in 2021 and filed this action in December 2023. *See* Doc. No. 1. Plaintiffs allege that the Policy is governed by the Employee Retirement Income Security Act of 1947 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and bring two claims under that law, in addition to a cause of action for attorneys' fees.[3] *See* Doc. No. 16 at ¶¶ 83-106. They also bring two state law claims, one for failure to pay wages in violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*, and for breach of contract. *Id.* at ¶¶ 109-129. After Defendants filed their first motion to dismiss in March 2024, Plaintiffs filed an Amended Complaint in April 2024, and the Court accordingly administratively denied the first motion to dismiss as moot the next day. *See* Doc. Nos. 12, 16, 17. Defendants filed the pending motion to

---

[2] Neither party has provided a written copy of the alleged pre-2019 Policy and Plaintiffs specifically allege that they were never given any documents at the time the original Policy was in effect.

[3] Defendants point out that a request for attorneys' fees is more appropriately raised as a claim for relief rather than an independent cause of action as Plaintiffs' have alleged. Doc. No. 19 at 7 n.9. Plaintiffs did not acknowledge this argument. *See* Doc. No. 21. However, the Court need not address this argument because, as discussed below, the Court finds that the Plan is not governed by ERISA.

dismiss the Amended Complaint two weeks later in late April 2024. The motion has been fully briefed and is ripe for the Court's ruling.

## III. DISCUSSION

Defendants' primary argument for why Plaintiffs' ERISA claims should be dismissed is that the Policy is not governed by ERISA.[4] They also argue that the North Carolina state law claims must be dismissed for lack of subject matter jurisdiction and because they are preempted by the federal Service Contract Act, 41 U.S.C. § 6701 *et seq*. For the reasons discussed below, the Court finds that the Policy does not fall under ERISA and that the state law claims must be dismissed for lack of subject matter jurisdiction. It does not reach the issue of preemption by the Service Contract Act.

### A. <u>Considering Materials "Outside" the Pleadings</u>

Plaintiffs argue that the Court must convert Defendants' motion into one for summary judgment (and accordingly grant leave for discovery) if it considers the "various materials and documents" relied upon by Defendants outside of Plaintiffs' Amended Complaint, including Plaintiffs' paystubs and the pre-2019 Policy. *See* Doc. No. 21 at 7-8. Because the Court does not reach the pay-related claims on the merits, it need not consider Plaintiffs' argument regarding the paystubs.

As discussed above, with respect to the Policy documents, a "document that is not attached or explicitly incorporated by reference, but that is authentic and integral to the complaint, may be

---

[4] Plaintiffs allege that GSI intended the Policy to comply with ERISA requirements. Doc. No. 16 at ¶¶ 41-42. However, taking that factual allegation as true (although the Court sees no mention of ERISA in the Policy document), an employer's "belief that the [plan] constituted an ERISA plan … does not transform an otherwise deficient plan into one covered by the ERISA statute." *Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 420 (D. Md. 2005); *see* Doc. No. 19-2 at 2-3.

5

considered without converting the motion to a Rule 56 motion." *O'Neill v. Open Water Adventures Inc.*, No. 3:20-CV-00476-GCM, 2021 WL 2652950, at *2 (W.D.N.C. June 28, 2021) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164–66 (4th Cir. 2016)). The Amended Complaint makes numerous factual assertions regarding the age of the Policy, eligibility criteria before and after the alleged 2019 amendments, and asserts that "Plaintiffs met the only criteria for entitlement to benefits under the Plan, to wit, none of Plaintiffs were terminated for cause before leaving employment with Defendant GSI," which is a direct reference to the alleged eligibility criteria for the original Policy. Doc. No. 16 at ¶¶ 36-53. Plaintiffs' first cause of action specifically argues that the alleged 2019 amendments violate the anti-cutback rules under ERISA and thus were unlawful amendments to the original Policy. *Id.* at ¶¶ 83-85. Further, there has been no claim that the written Policy, as amended in 2019, in the record is not authentic.

Thus, Plaintiffs themselves have explicitly relied on both versions of the Policy. Moreover, the fact that Plaintiffs specifically pled that they were entitled to benefits under the original Policy, *id.*, and rely on the "for cause" language of the original Policy to support their present argument that the language created sufficient discretion to make the Policy an ERISA plan, *see* Doc. No. 21 at 11, fatally undercuts their contention that these materials fall outside the pleadings or that discovery is needed before resolution of this motion to determine the terms of the original Policy, its authenticity, "or whether it is applicable to Plaintiffs' claims." *Id.* at 9.

    **B.**    **ERISA Claims**

ERISA is a "comprehensive and reticulated statute" that "governs employee benefit plans, including retirement plans." *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 468 (4th Cir. 2020) (quoting *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 417 (4th Cir. 2007) (internal quotation

marks omitted)). Importantly, ERISA only governs employment benefit *plans*, not merely employee benefits. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8-9 (1987).

In *Fort Halifax*, the Supreme Court established the test for analyzing whether an employee benefit plan exists. According to the *Fort Halifax* test, an employment contract or state statute establishes an ERISA plan if the benefits provided by their very nature require "an ongoing administrative program." *Id.* at 11. Pursuant to this test, the *Fort Halifax* Court concluded that a Maine statute requiring employers to provide a one-time severance payment to employees who lost their jobs as a result of a plant closing did not implicate ERISA. The Court stated that:

> The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit *plan.* The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.

*Fort Halifax,* 482 U.S. at 12.

Thus, an employee benefit plan exists if an arrangement between an employee and an employer requires an ongoing administrative program to meet the employer's obligations. Four factors often considered are:

> (1) whether the payments are one-time lump sum payments or continuous payments; (2) whether the employer undertook any long-term obligation with respect to the payments; (3) whether the severance payments come due upon the occurrence of a single, unique event or whenever the employer terminates employees; and (4) whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

*Donovan v. Branch Banking & Tr. Co.*, 220 F. Supp. 2d 560, 564–65 (S.D.W. Va. 2002) (citing *Emmenegger v. Bull Moose Tube Co.,* 197 F.3d 929, 934-35 (8th Cir.1999)); *Mullaly v. Ins. Servs.*

7

*Office, Inc.*, 395 F. Supp. 2d 290, 295 (M.D.N.C. 2005) (same). "Typically, none of [the factors] on its own is determinative," *Donovan*, 220 F. Supp. 2d at 565 (quoting *D'Oliviera v. Rare Hospitality Int'l, Inc.,* 150 F.Supp.2d 346, 351 (D.R.I. 2001)), but the degree of employer discretion "is perhaps the most significant factor." *Mann v. Power Home Solar, LLC*, No. 521-CV-166-KDB-DSC, 2022 WL 602196, at *4 (W.D.N.C. Feb. 28, 2022) (citing *Blair v. Young Phillips Corp.*, 158 F. Supp. 2d 654, 658–59 (M.D.N.C. 2001)).

There is no dispute that payments under the Policy were made via one-time, lump-sum checks, which weighs in favor of finding that there was no ongoing administrative scheme. Nor do the parties appear to contest that GSI did not take on any longer-term obligations with respect to these payments, which again counsels in favor of finding that the Policy is not a plan subject to ERISA.

As for the third factor, Plaintiffs contend that the Policy is triggered by recurring events rather than a single, unique event such as an entire factory closing as happened in *Fort Halifax*. As alleged by Plaintiffs "[u]pon information and belief, many GSI employees received a payout under this Plan..." and GSI "has paid out over $400,000 to retirees of GSI's Defense Unit over the last ten years" under the Policy. Doc. No. 16 at ¶¶ 37, 43; *see* Doc. No. 21 at 12. Plaintiffs further plead that "GSI's obligations are recurring as employees retire, which necessarily involves ongoing administration. While payment would be at a single occasion, that single occasion could be triggered at different times depending on when the eligible employee retired from GSI (which is true of many ERISA-covered plans, including 401(k) profit-sharing plans)." Doc. No. 16 at ¶ 40. Taking the facts, but not the legal conclusions, in the light most favorable to Plaintiffs, as the Court is required to do, Plaintiffs have alleged that the Policy has existed in some form for many years,

8

many eligible employees have received these benefits, and payments are made upon a common triggering event for which the date, but not the occasion, is unique to each eligible employee.

However, the Court has not found, nor has Plaintiff cited, any authority stating that such circumstances categorically create an ERISA plan. In fact, there is a sizable line of cases finding that "an arrangement requiring only a lump sum payment after a triggering event is not a 'plan' under ERISA." *Donovan*, 220 F. Supp. 2d at 568 (collecting cases). Moreover, at least one court in this Circuit has found that a severance payment, "triggered by a single event, that is, the decision of the eligible [employee] to retire" did not constitute an ERISA plan. *Child-Olmsted v. Loyola Coll.*, No. CIV.A. CCB-04-3559, 2005 WL 1000085, at *5 (D. Md. Apr. 28, 2005). Thus, the Court finds that the third factor likely weighs against finding the Policy was an ERISA plan.

Even if the Court found differently on the third factor as Plaintiffs' request, the lack of employer discretion does not support a finding that there is sufficient case-by-case review of employees to establish an ERISA plan. The Policy is implemented in the following way: Eligible employees are automatically mailed a request form one week after retiring. Once the employee returns the form, an employee in GSI's human resources department uses four yes-or-no questions to confirm eligibility with the Policy's criteria before entering the bonus amount, which is calculated by employing the same mathematical formula for every eligible employee. Human resources then submits this information to payroll, which issues a check. *See* Doc. Nos. 19 at 5; 192 at 3-4. Plaintiffs contend that the original Policy provided GSI discretion because it had to determine whether the employee had been terminated "for cause," which it notes "likely involved the interpretation of certain qualifying terms or Company policies." Doc. No. 21 at 11. However, many courts have found that determining whether an individual was terminated "for cause" does not suggest meaningful discretion, particularly where good cause "is specifically and narrowly

9

defined, rather than entirely a matter of [the employer's] discretion." *Donovan*, 220 F. Supp. 2d. at 568; *Robbins v. Friedman Agency, Inc.*, 760 F. Supp. 3d 564, 568 (E.D. Va. 2010) (distinguishing a plan in which the defendant determined value of the benefit based on plaintiff's book of business from plans involving "mechanical calculations" and "formula[s] involving the term of service."). Others have made clear that "[a]ssessing whether an employee complied with … provisions [of a policy] appears to be a purely ministerial task" and such a "minimal amount of discretion does not necessarily imply an ongoing administrative scheme. *Mazer*, 388 F. Supp. 2d at 421. In other words, merely looking at a personnel file to determine whether an employee has been terminated for cause or is leaving for a different reason involves no discretion (even if a "for cause" termination itself likely reflects an employer's discretion). Moreover, GSI's use of existing, routine administrative procedures to administer the Policy suggests no ongoing administrative scheme existed. *See Emery v. Bay Capital Corp.*, 354 F. Supp. 2d 59, 594 (D. Md. 2005) ("Simply continuing to pay Plaintiffs salary for six months after his termination, presumably out of Defendant's general fund, does not require the establishment of a separate, ongoing administrative scheme to administer these severance benefits.").

In short, the Policy, as alleged by Plaintiffs, is only a one-time lump-sum payment determined by a consistent formula that is offered to eligible retiring employees as part of the Defendant's existing infrastructure. The Court therefore concludes that there is no ongoing administrative plan required in connection with GSI's alleged obligations and thus no ERISA benefit plan. As a result, no ERISA claim may arise from the alleged Policy and the ERISA claims will be dismissed.

### C. North Carolina State Law Claims

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U. S. 375, 377 (1994). They accordingly may only hear cases "as far as Article III permits and Congress chooses to confer." *Navy Fed. Credit Union v. LTD Financial Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020) (citing U.S. Const. Art. III, § 1, cl. 2; *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 448–49, 12 L.Ed. 1147 (1850); *cf. Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 328–31, 4 L.Ed. 97 (1816)). One of those bases for jurisdiction, relevant here, is diversity jurisdiction, which has two requirements: (1) complete diversity, meaning that no plaintiff has the same citizenship of any defendant, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).[5] It is axiomatic that the plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *See Demetres v. East West Const. Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

The parties disagree over whether Plaintiffs have sufficiently alleged that the amount in controversy exceeds $75,000. To answer this question, "a court must look to the Complaint and determine whether a plaintiff has set forth a claim in good faith that meets the amount in controversy requirement. *Campbell v. Uptowner Inns, Inc.*, No. CV 3:22-0417, 2023 WL 6466218, at *2 (S.D.W. Va. Oct. 4, 2023) (citing *Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981)). Importantly, "'it must be clear from the face of the complaint' that the amount-in-controversy requirement is met." *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1016 (W.D.N.C. 2021) (quoting *Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 631 (4th Cir. 2007)).

---

[5] Federal question jurisdiction does not exist in this case because the Policy is not an ERISA plan. Thus, Plaintiffs' state law claims may only proceed if they independently invoke the Court's jurisdiction.

11

In response to Defendants' Motion, Plaintiffs assert that they have alleged sufficient facts supporting that one or more unidentified Plaintiffs have damages that exceed $75,000. Doc. No. 21 at 25. The supporting language they cite to in their Amended Complaint says that "the amount of damages in controversy exceeds $75,000 and there is complete diversity of citizenship between all Plaintiffs and Defendants. One or more individual Plaintiffs has damages that exceed $75,000." Doc. No. 16 at ¶ 4. The Amended Complaint, however, is devoid of any factual allegations to support this conclusion. The Court further considers that Plaintiffs were on notice of their need to bolster these allegations. Defendants raised this same concern in their first motion to dismiss. *See* Doc. No. 13 at 12-14. Plaintiffs responded by filing an Amended Complaint, which only differs from the original complaint by noting without the requisite specificity that "one or more" Plaintiffs have adequate damages. *Compare* Doc. Nos. 1 at ¶4, 16 at ¶ 4.

Plaintiffs cannot meet their burden with mere conclusory statements. They especially cannot do so, nor claim to have satisfied this requirement in good faith, after being put on notice of this exact issue by a prior motion to dismiss and failing to provide any supporting factual allegations in the Amended Complaint (or their response to the motion to dismiss). The Court therefore finds that Plaintiffs have not plausibly pled that this Court has subject matter jurisdiction over the state law claims and will dismiss them.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 18) is **GRANTED;** and

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 21, 2024

*[Signature]*

Kenneth D. Bell
United States District Judge